**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUZANA KRAJISNIK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 21-cv-00775 |
| | ) | |
| C.D. PEACOCK, INC., | ) | Trial by Jury Demanded |
| SEYMOUR HOLTZMAN, | ) | |
| individually, ROBERT | ) | |
| BAUMGARDNER, individually, | ) | |
| DYOL HILL, individually, | ) | |
| CHRISTOPHER CROTEAU, | ) | |
| individually, & YINGXUE DUAN, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO RECONSIDER PURSUANT TO RULE 59(e) AND RULE 60(b)

NOW COMES plaintiff, Suzana Krajisnik ("Krajisnik"), by her attorneys, the Garfinkel Group, LLC, and for her Motion to Reconsider (the "Motion") pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and states:

## FACTUAL BACKGROUND

Krajisnik was an employee of Defendant C.D. Peacock, Inc. ("CDP"). While working in sales at CDP's jewelry boutique in Skokie, Illinois, Krajisnik and two fellow employees uncovered a Scheme of illegal activity (the "Scheme") being perpetrated by a coworker, Yingxue Duan ("Duan"), and multiple management-level employees, including CEO Robert Baumgardner. The Scheme was perpetrated with full knowledge of CDP owner and Defendant Seymour Holtzman.[1] The heart of the Scheme was a conspiracy by the Defendants to illegally volume sell luxury Rolex and Patek Philippe watches to foreign resellers in Taiwan and possibly other countries in order to enrich themselves. In order to further the Scheme, the Defendants, collectively, conspired to violate

---

[1] Holtzman's knowledge of the Scheme is inarguable. Emails sent by Plaintiff Krajisnik and a former coworker, upon each's respective firing, as well as Holtzman's response to Krajisnik's email, confirm that he was aware of and apparently unconcerned by the allegations. These emails were filed as Exhibits O and P to the Complaint. Dkt. Nos. 9, 14.

numerous federal and state laws including but not limited to racketeering, money laundering, mail, wire, immigration, and credit card fraud, and Illinois sales tax evasion.

After alerting CDP management of this Scheme, repeatedly, and refusing all offers to participate and threats of repercussions if they did not stop reporting the Scheme, Krajisnik and her two coworkers, respectively, were all terminated in retaliation for their attempts to expose, and their refusal to participate in, the Scheme.

## PROCEDURAL HISTORY

Prior to Krajisnik's filing of the instant action, CDP, in order to win the proverbial race to the courthouse, brought its own suit for declaratory judgment in the Circuit Court of Cook County (2020 CH 05583) (the "State Court Case"). CDP filed this suit in a transparent attempt to silence Krajisnik and her coworkers, and prevent them from filing suit and exposing the Scheme to the general public and CDP's suppliers, especially Rolex. Although it does not bear directly on this case, the declaratory judgment action makes CDP's real motives for attempting to seal the Complaint and Exhibits in this case. The State Court Case alleges that Krajisnik was subject to a confidentiality agreement as part of her employment However, to date, CDP has never produced any evidence that Krajisnik was subject to a confidentiality agreement, either with CDP, or with third-party vendors, like Rolex. The State Court Case is without merit, and a Motion to Dismiss is currently pending and set to be heard April 2, 2021.

Krajisnik filed the instant lawsuit on February 11, 2021 (the "Federal Case"). That same day, CDP filed a motion to seal Krajsnik's Complaint and Exhibits (the "Motion to Seal"). Dkt. No. 6. Contrary to the representations in CDP's Motion to Seal, its purpose was not to protect its "trade secrets," but rather, to keep its misconduct out of the public view, and, by extension, protect its relationship with suppliers like Rolex, which would be damaged if the illegal Scheme were exposed. CDP's Motion to Seal focuses primarily on its efforts to keep the names of its vendors out of Krajsnik's Complaint. The vendor names are first mentioned in Paragraph 6, prior to any other alleged confidential information or trade secrets. The names of CDP's suppliers are neither confidential nor a trade secret. Indeed, CDP proudly advertises its status as a Rolex and Patek Philippe authorized distributor publicly and on its website. (See Complaint, ¶ 36, Dkt. No. 9).

As further evidence that CDP's concern is not for its allegedly confidential information, but for its reputation, CDP's counsel gave a at least one, if not multiple media interviews and made

multiple public statements after this Suit was filed.[2] In this interview, counsel discusses the allegations of Plaintiff's Complaint, reveals confidential settlement discussions, and describes her legal strategy. Id.

This Court heard oral argument CDP's Motion to Seal on an Emergency basis, on February 12, 2021. See, Transcript of the Hearing on the Motion to Seal, Dkt. No. 16 (the "Transcript"). This Court denied Plaintiff's request to brief the issue and contest the motion substantively in writing. Id at pg. 5-6. After ruling that good cause was required to be shown to grant a motion to seal, this Court granted Defendants' Motion to Seal with respect to Paragraphs 39-44, 47-54, 58, 61-63, 87, 93, 106, 121, 161, and 178-79, and Exhibits A-C, J, and O. It was denied with respect to Paragraphs 45-46, 108, and 18-19, Exhibits D-I, N, and P. Id at pg. 16-18. This Court did not: (a) specifically provide its reasoning for its ruling, (b) specifically rule that a protectable trade secret existed, or (c) explain it's determination that CDP had shown good cause to support such a ruling. Id. At the hearing's conclusion, Plaintiff inquired as to whether this Court would allow briefing on the matter after the initial ruling, but this Court rejected that request and clarified that its ruling was final. Id at pg. 19. Plaintiff respectfully requests that this Court reconsider its order granting the Motion to Seal pursuant to Rules 59(e) and 60(b).

## STANDARD

### Rule 59

Although the Federal Rules of Civil Procedure do not contain a specific provision for a motion for reconsideration, where such motions are filed within the 28-day time limit of Rule 59(e), courts treat these motions for reconsideration as Rule 59 motions. *Zepter v. Dragisic*, 237 F.R.D. 185, 187 (N.D. Ill. 2006). This is the case even if the order under reconsideration is an interlocutory order. *Id.* "A Rule 59(e) motion will be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citing *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). The rule exists to allow the court to correct its errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings. *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir.1986).

---

[2] https://www.watchpro.com/exclusive-rolex-dealer-rubbishes-racketeering-lawsuit/

### Rule 60(b)

Federal Rule of Civil Procedure 60(b) allows a district court to relieve a party from a final judgment or order in any of six circumstances including "(1) mistake, inadvertence, surprise, or excusable neglect," and "(6) any other reason that justifies relief." *Mendez v. Republic Bank*, 725 F. 3d 651, 657 (7th Cir. 2013). In the instant matter, this Court unambiguously stated that this was a final order on the matter. Id at pg. 19. Hence, the Court may hear this motion under Rule 60(b) as a final order.

### <u>ARGUMENT</u>

Respectfully, the order granting in part CDP's motion to seal rests on manifest errors of law and fact warranting relief under Rule 59 and Rule 60. First, the Court analyzed the Motion to Seal solely within the context of Local Rule ("L.R.") 26.2 and did not consider the First Amendment protections which apply to restricting the public's right to participate in the courts. Second, CDP failed to meet its burden to show the good cause required to grant such a motion. Lastly, the alleged secrets CDP sought to protect are not trade secrets.

### I.    The Court Should Have Applied the First Amendment Standard to CDP's Motion to Seal

The general principle of the American court system is that the public has an interest in its proceedings at all stages of a case. *Citizens First Nat. Bank v. Cincinnati Ins. Co.*, 178 F. 3d 943, 945 (7th Cir. 1999). The Seventh Circuit has held, in relevant part:

> Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.

*Union Oil Co. of California v. Leavell*, 220 F. 3d 562, 568 (7th Cir. 2000) (internal citations omitted). The right of public access to documents or materials filed in a district court derives from two sources: the common law and the First Amendment. *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 US 501, 516 (1984) (STEVENS, J. concurring in judgment); *Nixon v. Warner Communications, Inc.*, 435 US 589, 598 (1978). The common law presumes a right to inspect and copy judicial records and documents. *Nixon*, 435 U.S. at 597. The common law presumption of access may be overcome if competing interests outweigh the interest in access. See *Citizens First Nat. Bank*, 178 F. 3d at 945.

In contrast to the common law right, the First Amendment right of public access the courts may be overcome only by a compelling interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Richmond Newspapers, Inc. v. Virginia*, 448 U. S. at 510; *Stone v. University of Md. Medical System Corp.*, 855 F. 2d 178, 180 (4th Cir. 1988) ("Where the First Amendment guarantees access, on the other hand, access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest."). The interest is to be articulated with specific findings sufficient for a reviewing Court to consider. *Id.*

A. The Court Did Not Analyze Whether the First Amendment Standard Applies to CDP's Motion

The Court's decision did not consider which standard should apply to CDP's motion to seal. In providing the standard by which it made its decision, the Court stated: "As a general matter, there's a presumption that papers filed in the court record are public and should be publicly available. The exception is if there is good cause to deem them confidential or protected." (Transcript Pg. 16, Ln 14-17). The Court never specifically stated the authority for this standard, but it echoes LR 26.2 which states that "[t]he court may for good cause shown enter an order directing that one or more documents be restricted." LR. 26.2. However, the rule and committee notes do not address whether the rule can be applied in the case of constitutional challenge to a motion to seal. The committee notes to LR 26.2 cite *Citizens First Nat'l Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 946 (7th Cir. 1999) as authority that the rule is consistent with Seventh Circuit precedent.

B. L.R. 26.2 Is Not Intended to Be Applied to the Situation in the Instant Case

In *Citizens First*, the case cited by the committee notes to L.R. 26.2, the appellants filed a motion to seal portions of the record, citing an agreed protective order from the lower court. 178 F. 3d at 944. The court in *Citizens First* found that the district court had abdicated its responsibility to protect the public's right of access when it issued an order that largely allowed the parties to determine what documents to seal. *Id* at 945. Instead, good cause for sealing the record was required. *Id.* The decision itself contains no mention of the First Amendment, let alone analysis of its impact on a judicial decision to seal a portion of the record.

*Citizens First*, and the amendments to LR 26.2 that followed, are meant to remedy situations in which parties stipulate to overly broad protective orders that do not take into account the public's right to participate in the courts. L.R. 26.2 and *Citizens First* should not be read to hold that, in a contested motion to seal such as, Defendants' instant Motion to Seal that has been brought before this Court, only good cause need be shown, but rather, that in the case of an uncontested motion to

seal, at a minimum, good cause must be shown. Nothing in *Citizens First* or the L.R. 26.2 can possibly be read to alter the compelling interest test established by the Supreme Court when considering the public's First Amendment rights to participate in the courts.

    C.   <u>CDP Failed to Address the First Amendment Standard in Its Motion</u>

        CDP's Motion does not address whether the common law or First Amendment standard should be applied. Instead, Defendants' primarily relies on L.R. 26.2(b), which provides that the Court "may for good cause shown enter an order directing that one or more documents be filed under seal." In addition to LR 26.2, CDP's motion to seal cites 7th Circuit's decisions in *Jessup v. Luther*, 277 F.3d 926, 927-928 (7th Cir. 2002) and *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002), as well as an Eastern District of Wisconsin decision, *Danaher Corp v. Gardner Denver, Inc.*, 2020 U.S. Dist. LEXIS 177377, n. 1 (E.D. Wisc. Sept. 28, 2020), all of which can be distinguished from this case.

        *Baxter* is similar to *Citizens First* in that it arose from a joint motion to seal filed by the parties. 297 F.3d at 545. Like in *Citizens First*, the court found that the motion was overbroad and failed to specify good cause for the material to be sealed. *Id.* Like *Citizens First*, *Baxter* stands for the proposition that at a minimum, good cause must be shown to grant a motion to seal. Like *Citizens First*, *Baxter* is silent on the issue of the First Amendment and therefor does nothing to disturb the compelling interest test for abrogation of the public's First Amendment right to participate in the courts.

        *Jessup*'s relevance here is likewise dubious. The *Jessup* court was called upon to rule on an appeal of a denial of a motion brought by a third-party newspaper publisher to unseal a confidential settlement agreement[3] reached in that case. 277 F.3d at 927. *Jessup*'s holding is inapplicable here. The court in *Jessup* specifically relied on the fact that settlement agreements have historically been confidential, that confidentiality is often the one of the motivating factors for settlement, and that settlement does not involve the judicial process or the courts except to the extent the court issues an order to dismiss the case pursuant to settlement. *Id* at 928-929. None of those circumstances are present here. Complaints are not historically secretive, nor is any interest served by making it so. As such, *Jessup* is not persuasive on any issue before the Court regarding CDP's motion to seal.

---

[3] It is ironic that CDP would ask this Court to apply a ruling directed to the confidentiality of a settlement agreement when CDP has revealed confidential Rule 408 communications in its Motion to Seal, and also on several occasions in its declaratory judgment action filed in Cook County Circuit Court.

*Danaher*, likewise, offers no guidance regarding any issue present in CDP's Motion to Seal. The *Danaher* decision actually concerned a plaintiff's motion to amend its complaint. *Id* at *1. The entirety of the court's discussion of the motion to seal is limited to two sentences in a single footnote stating: "The parties also filed various motions to seal the complaint and supporting documents. (Docket #52, #56, #63, #67). The Court will grant the motions to seal, albeit skeptically, since, according to Danaher, the information contained in the memoranda, exhibits, and proposed amended complaint is confidential (if not a trade secret)." *Id* at n1. There is no analysis on which this Court might rely, and the court in *Danaher* even stressed his skepticism towards the motion, suggesting it may be reevaluated later, an opportunity the Court expressly denied the parties here. (Ex. A, pg. 19).

Neither the Court's decision nor CDP's Motion to Seal contain any discussion of the public's First Amendment rights or interests. Plaintiff requested an opportunity to brief the issue and was denied. Respectfully, such an omission constitutes a manifest error of law and requires reconsideration of the order granting the motion to seal in part.

D.  The First Amendment Standard Applies to CDP's Motion to Seal

Although the issue was not discussed or briefed, a review of the surrounding facts and law show that the First Amendment standard should be applied to CDP's Motion to Seal. The Supreme Court has provided a general framework for determining when the First Amendment Right applies to a motion to seal. *See Rushford v. New Yorker Magazine, Inc.*, 846 F. 2d 249, 253 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. at 510). To determine whether the First Amendment right applies to a motion to seal, a court must consider two factors: (1) whether the place and process have historically been open to the press and general public; and (2) whether public access plays a significant positive role in the functioning of the particular process in question. *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986) (hereafter cited as *Press-Enterprise II*); *U.S. v. Corbitt*, 879 F. 2d 224, 228 (7th Cir. 1989). Had the Court applied this framework of analysis to Defendants' Motion, it would have found that the First Amendment protection applies to the pleadings here.

It is axiomatic that the public has a right to view pleadings. *See Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F. 3d 893, 897 (7th Cir. 1994). Two Supreme Court decisions are illustrative of this principle: *Press-Enterprise Co. II,* and *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 US 211 (1979). At issue in *Douglas Oil* was the right of the public to attend grand jury proceedings. In ruling that the public may be barred from such proceedings, the court held, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Id* at 219.

The *Press-Enterprise Co. II* decision stands in stark contrast to *Douglas Oil.* There, the Court held that there was a public right to attend preliminary hearings, because such hearings had historically been open to the public and were an important step in the judicial process. 478 U.S. at 11-12. The court further reasoned that "the absence of a jury, long recognized as an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge, makes the importance of public access to a preliminary hearing even more significant." *Id* at 12-13 (internal quotations omitted).

Plaintiff's Complaint clearly falls more in line with the preliminary hearing discussed in *Press-Enterprise Co. II*, than the grand jury proceedings in *Douglas Oil.* Complaints have historically been publicly available. See L.R. 5.7 (describing the process required to file under seal). The complaint is also one of the most important stages of a civil case. The entirety of the proceedings rely on the allegations contained within the complaint, and the causes of action enumerated within. Pleadings share none of the need for secrecy as the grand jury proceedings in *Douglas Oil.* There is no historical preference for secrecy in pleadings, nor does secrecy aid the proceedings or the public's right and interest in access to the courts in any meaningful way.

Courts in other districts have similarly recognized that the compelling interest standard required by the First Amendment applies to contested motions to seal the complaint and accompanying exhibits. *See Baldwin v. U.S.*, 732 F. Supp. 2d 1142, 1143-44 (D. N. Mar. 2010). In *Baldwin*, the court was faced with a similar motion to seal portions of the complaint and exhibits thereto. *Id* at 1143. In denying the motion to seal, the court found that the compelling interest standard applied to the motion because "(1) the document is part of the judicial record; and (2) the document is integral to the underlying cause of action." *Id* at 1144. The *Baldwin* court also noted that the documents sought to be sealed, private tax records, were not "private materials unearthed during discovery," that have not historically been open to the public. *Id* at 1143. As in *Baldwin*, the information sought to be sealed was not unearthed in discovery. Instead, it was part of the Plaintiff's Complaint. The Complaint is part of the judicial record, and is integral to the underlying cause of action. Because all of the factors discussed in *Baldwin* in favor of applying the compelling are present here, the Court should follow the reasoning in *Baldwin* and apply the compelling interest test to CDP's motion to seal.

E. The Public Has A Strong Interest in the Subject Matter of the Plaintiff's Complaint

The presumed openness of the Complaint also provides a public good in this case in particular. The selling of high value watches on the "gray market"[4] is an issue for watch collectors everywhere, and the public in general as the scarcity and high value of these items often lead to the exact type of illegal behavior alleged in the complaint, including but not limited to money laundering, sales tax fraud, and artificially inflating the price to the consumer.[5] Hundreds of articles have been written about the gray market. Watch manufacturers, despite their efforts, have shown little sign of being able to combat it.

Sales tax fraud is a serious issue facing the state of Illinois. In 2014 alone, the State of Illinois recovered more than $100 million in fraudulently unpaid sales taxes.[6] Considering the condition of the state finances, that loss will be felt by every citizen of the state, and especially its poorest and most vulnerable who rely on state services that may be cut to make up for budget shortfalls.

Rolex and Patek Phillipe would also no doubt be interested in the fraudulent behavior of CDP and its employees exposed in the Complaint. Although CDP purports to be protecting Rolex and Patek Phillipe's interests with its Motion to Seal, it is merely attempting to keep the details of Scheme from these watch makers to avoid any potential damage to their business relationship with CDP. The interests CDP seeks to protect are its own, alone. Keeping their misconduct, a secret serves no purpose other than to further the goals it has telegraphed with its barrage of state-level pleadings attempting to silence the Plaintiff.

Because complaints are historically open to the public, and because that openness plays a significant positive function in the function of the judicial process, the Court should have applied the First Amendment standard to CDP's Motion to Seal. Plaintiff respectfully request this Court reconsider its order granting CDP's motion to seal in part.

F. The Court's Order Does Not Sufficiently State the Reasons for Sealing the Record

A motion to seal should not be granted unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Press Enterprise II*, 478 U.S. at 29. Because the motion to seal was heard on an emergency basis, the parties were not permitted to brief the issue prior to the hearing. Plaintiff's request during the hearing to brief the issue was denied. Transcript Pg. 5. Plaintiff also enquired of the Court

---

[4] The gray market describes the sale of watches by someone other than an authorized dealer.
[5] See e.g. https://wristadvisor.com/rolex-and-the-grey-market-what-you-need-to-know/
[6] https://ag.state.il.us/pressroom//2014_10/20141023.html

whether, after the ruling, the issue could be presented to the court after briefing for a final ruling. Transcript Pg. 19. This request was also denied. Id. The Court's ruling included no specific findings demonstrating that a compelling interest existed or that the restriction was narrowly tailored to serve that interest. See Transcript Pg. 17-19. Because no such findings were made, Plaintiff respectfully requests this Court reconsider its order granting CDP's Motion to seal in part.

**II.    The Sealed Paragraphs and Exhibits do not Meet the Definition of Trade Secrets**

Respectfully, this Court erred in ruling that CDP had shown there was good cause to seal portions of the Complaint and Exhibits.

A.   The Court Should Have Applied the Federal Definition of a Trade Secret

CDP's Motion relies on the definition of a trade secret found in the Illinois Trade Secrets Act (765 ILCS 1065/1 et seq). Mot. To Seal ECF #, Paragraph 5. This Court, in defining trade secrets, stated they are information "that might place one or more of the parties at a competitive disadvantage or provide information to the public that is not otherwise publicly available for the purposes -- or in that trade." Transcript Pg. 16. The Court did not identify the authority for this definition, but it parallels the definition found in the ITSA. However, neither CDP nor this Court analyzed why the Illinois Trade Secrets Act should control in this situation.

The general rule in federal courts is that where there is a conflict between state and federal laws, federal law is to control when deciding procedural issues. *Hanna v. Plumer*, 380 US 460, 471 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U. S. 64 (1938)). Accordingly, the appropriate definition of trade secrets that this Court should apply is found in federal law.

In 2016, The Defend Trade Secrets Act ("DTSA") (codified at 18 U.S.C. § 1836 et seq.) was signed into law. The DTSA, among other things, contains a definition of trade secret. See 18 U.S.C. § 1839(3). That definition reads much like the Illinois Trade Secrets Act in its opening paragraph and in subpart a, but subpart b contains significant differences which would materially affect any ruling on this matter. Subpart b reads in full:

> *(b) the information derives independent economic value, actual or potential, from not being generally known to,* **and not being readily ascertainable through proper means by,** *another person who can obtain economic value from the disclosure or use of the information;*

18 U.S.C. § 1839(3)(b) (emphasis added). In contrast is the corresponding section of the Illinois Trade Secrets Act, which provides:

> *(1)  is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and…*

765 ILCS 1065/1(d)(1) (emphasis added).

The DTSA requires that the information be secret enough that it is not readily ascertainable through proper means by outside persons. Compare this to the ITSA language, which merely requires that a trade secret be such that it is not generally known to the public. This changes the question from whether CDP's policies and other alleged trade secrets are generally known, to whether they are generally ascertainable. As discussed below, the answer to both questions is yes.

B. <u>The Court's Ruling Lacked Specific Findings of Good Cause</u>

To be successful, a motion to seal must "analyze the applicable legal criteria or contend that any document contains a protectable trade secret or otherwise legitimately may be kept from public inspection despite its importance to the resolution of the litigation." *Baxter*, 297 F.3d at 546. This Court's ruling did not provide the specific reason for granting the Motion to Seal as to any particular paragraph or exhibit. This Court's concern seemed to be solely for the policies and procedures of CDP and its suppliers, but its reasoning is unknown. Absent any information on that reasoning, the decision does not give the public or the Plaintiff the opportunity to challenge the sealing of parts of the Complaint and Exhibits thereto. *See Citizens First*, 178 F. 3d at 946. Because the ruling lacks the specificity required by law, Plaintiff respectfully requests this Court reconsider its order granting the Motion to Seal in part.

C. <u>CDP's Alleged Trade Secrets Are Generally Known by the Public</u>

Contrary to Defendants' written and verbal representations, the policies CDP seeks to protect are already well known to the public community of watch collectors. If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished. *Ruckelshaus v. Monsanto Co.*, 467 US 986, 1002 (1984)

Paragraphs 39-43 of the Complaint contain information regarding Rolex and CDP's policies regarding the sales of watches and the grey market to which watches are often resold. As should be evident from the footnotes to these paragraphs in Plaintiff's Complaint, this information is already public knowledge, and is likewise present in a publicly available version of the Rolex supplier agreement. For example, Rolex's strict policies for its authorized dealers, including audits, is

discussed in many threads[7] on the site www.rolexforums.com.[8]  It is clear that these restrictive policies are well known amongst the community of Rolex purchasers.[9] Because these policies are so well known and publicly available, they fail any version of the test for a trade secret. *Ruckelshaus v. Monsanto Co.*, 467 US 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret.").

Paragraphs 47-54 contain information regarding CDP's policies regarding the collection of sales taxes and the shipping of watches out of state. It is difficult to see how CDP's compliance with state sales tax collection laws would offer any economic advantage over other watch retailers, who are subject to the same laws. Nor are the intrepid readers of www.rolexforums.com in the dark about sales tax and shipping policies.[10] Because these policies are known to both the public and the watch retail industry, they cannot be trade secrets. *See Rucklehaus*, 467 U.S. at 1002.

Paragraphs 51-54 of the Complaint concern certain procedures used by CDP when receiving inventory and making sales of watches. As with the policies discussed above, these policies largely derive from the Rolex authorized dealer agreement. The anonymous masses at www.rolexforums.com and other such websites and blogs, know these procedures as well.[11] These

---

[7] https://www.rolexforums.com/showthread.php?t=524062 (discussing Rolex policies and audits); https://www.rolexforums.com/archive/index.php/t-376705.html (discussing authorized dealer discounts including the fact that Rolex uses personal shoppers.);
https://www.rolexforums.com/showthread.php?t=775597 (discussing why Rolex does not allow internet sales); https://www.rolexforums.com/showthread.php?t=713035 (discussing Rolex policy regarding retailers retaining warranty cards); https://www.rolexforums.com/showthread.php?t=568018 (discussing new Rolex policies on warranty cards)
https://www.rolexforums.com/showthread.php?t=739484 (discussing maintaining relationships with authorized dealers to obtain high demand watches);
https://www.rolexforums.com/showthread.php?t=680193 (discussing authorized dealer's ability to sell over MSRP)
[8] Although this brief references www.rolexforums.com frequently, similar discussions can be found anywhere watch aficionados congregate. See e.g. https://www.reddit.com/r/rolex/ . www.rolexforums.com was simply chosen because it was easy to search via google.
[9]
https://www.reddit.com/r/Watches/comments/2s6wwq/ama_i_work_for_an_ad_of_rolex_patek_panerai_etc/ (an entire thread in which an authorized dealer employee discusses policies)
[10] https://www.rolexforums.com/showthread.php?t=614074 (discussing sales tax and shipping);
https://www.rolexforums.com/showthread.php?t=28639 (thread including poll which shows 36% of users responding did not pay sales tax by shipping watches out of state);
https://www.rolexforums.com/showthread.php?t=696695 (further discussions about changes in sales tax laws)
[11] https://www.rolexforums.com/showthread.php?t=354273 (discussing authorized dealer policies on serial numbers)

policies are known to both the general public and the retail watch industry, and are therefore, likewise, do not meet the definition of trade secrets. *Ruckelhaus*, 467 U.S. at 1002.

Paragraph 58 of the Complaint concerns certain sales goals that Plaintiff alleges were set by CDP. The idea of sales goals is certainly well known throughout any industry involving sales and not uncommon or unique to CDP or the jewelry industry. It is difficult to understand how knowledge sales goal for a year that is in the past could offer a competitor an economic advantage.

Paragraphs 61-63 of the Complaint concern co-whistleblower Giuseppe "Joe" Di Lorenzo's duties as Rolex manager of the CDP Oak Brook store. Although the good people at www.rolexforums.com do not appear to know Mr. Di Lorenzo personally, they do take notice of the duties of managers of authorized Rolex dealers.[12]

Paragraph 87 of the Complaint concerns Duan's shipping of watches out of state without collecting sales taxes, and includes a listing of states to which those watches were sent. This information, too, does not meet the definition of trade secrets. Even if this information was normally kept secret, the identity of the states to which the items were shipped is not specific enough to destroy that confidentiality. Nor is the bare mention that CDP policies seek to comply with the Supreme Court's *Wayfair* decision possibly a trade secret, as that opinion affects every retailer in the country who ships out of state.

Paragraph 93 of the Complaint concerns Duan's posting of Rolex watches for sale through Facebook. Rolex's policy regarding internet sales is well known.[13] It cannot therefore be a trade secret. Likewise, Facebook posts are public, made on the open internet, not privately, for the world to see. It does not follow that information Duan posted openly could fall within this definition.

Paragraph 106 of the Complaint again concerns certain policies of Rolex which control the supply of watches, especially those in high demand. These policies are a matter of much consternation for the good people of www.rolexforums.com.[14]

Paragraph 121 of the Complaint discusses the sale of certain watches by Duan to suspicious customers that were then shipped out of state to avoid paying sales taxes. Like Paragraph 87, no specific policies are mentioned, only that actions taken by Duan were against policies. No trade

---

[12] See e.g. https://www.rolexforums.com/showthread.php?t=136242 (discussing interactions with Rolex employees); https://www.rolexforums.com/showthread.php?t=705761 (discussing Rolex employees).
[13] https://www.rolexforums.com/showthread.php?t=775597 (discussing why Rolex does not allow internet sales).
[14] https://www.rolexforums.com/showthread.php?t=741048 (discussing supplies of rare watches); https://www.rolexforums.com/showthread.php?t=666236 (complaints about Rolex supplies); https://www.rolexforums.com/showthread.php?t=619641 (discussing Rolex supply strategy)

secrets could possibly be exposed because no proprietary policies are even described. Even if the information was normally kept secret, the fact that the receipt stated the watches were shipped to a "strawman" CVS in Nevada is not specific enough to create any confidentiality concerns.

Paragraph 161 of the Complaint describes certain actions that CDP took to remove Di Lorenzo and Krajisnik from the Rolex business after he refused to participate in the Scheme. While CDP certainly would want to keep secret its retaliatory behavior, it offers no good cause for why it constitutes a trade secret. This Court's rationale is also not clear, as no specific findings were stated.

Paragraphs 178-79 of the Complaint describe actions taken by Defendant Baumgardner to create the appearance of reaffirming Rolex policies after Krajisnik and her coworkers' attempts to expose the Scheme. As discussed above, these are the same publicly available and widely known policies that have been discussed at length on www.rolexforums.com, and to which all authorized dealers are subject. Even the allegedly new policy could hardly be considered secret when customers would need to be informed of it when they make a purchase.

Exhibit A contains excerpts of CDP's Rolex policies. They are well known amongst the watch community and are not secrets unique to CDP (see footnotes 3-10).

Exhibit B shows images of certain watch purchases. Exhibit C shows additional receipts and warranty cards. Exhibit J shows watch purchases made with Duan's credit card. CDP claims these receipts contain protectable and confidential personal information pursuant to Rule 5.2. Rule 5.2 states that the following material must be redacted: social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number. Rule 5.2 explicitly states that a party may include the last four digits of a financial account number in a pleading. Plaintiff redacted all the information required by Rule 5.2, and CDP alleges no other rationale for sealing this exhibit. Because CDP did not show good cause, Plaintiff respectfully requests this honorable Court reconsider its order sealing Exhibit B, C, and J.

D. <u>CDP's Rolex Policies are not Trade Secrets Because They are Derived from the Rolex Agreement to Which All CDP's Competitors Are Also Subject</u>

This Court chose to seal paragraphs and exhibits dealing with CDP's Rolex policies. Although This Court's rationale and findings are not stated specifically, Plaintiff assumes this Court found these paragraphs and exhibits to contain protectable trade secrets. Information that is generally known throughout an industry is not a trade secret. *Rucklehaus*, 467 U.S. at 1002. CDP's Rolex policies ultimately derive from its duties under the Rolex authorized dealer agreement. Other Rolex authorized dealers would be subject to the same duties through their own agreements with Rolex.

These other authorized dealers would therefore be required to put in place the same policies used by CDP. Because CDP's are well known by its competitors because they derive from the Rolex authorized dealer agreement, and therefor they are not trade secrets.

E. CDP's Policies Are Not Trade Secrets Because They Were Revealed to Krajsnik When She Was Not Subject to Any Confidentiality Agreement

Although CDP asserted in its Motion to seal that Krajsnik was subject to a confidentiality agreement, Krajsnik denies she was subject to any such agreement. CDP has never produced any documentation, either in this case or in the State Court Case, that shows Krajsnik was subject to a confidentiality agreement. Having revealed its "alleged" trade secrets to a person who was under no obligation to protect their confidentiality, CDP destroyed any interest it has in preservation the alleged trade secrets. *Ruckelhaus*, 467 U.S. at 1002 ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information… his property right is extinguished.").

## **CONCLUSION**

For the aforementioned reasons, Plaintiff respectfully requests this honorable Court enter an order granting Plaintiff's Motion to Reconsider Pursuant to Rules 59 (e) and 60(b) of the Federal Rules of Civil Procedure and for any other relief that is just and proper.

The Garfinkel Group, LLC
6252 N. Lincoln Avenue
Chicago, IL 60659
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Haskell Garfinkel (IARDC No. 6274971)
haskell@garfinkelgroup.com
(312) 736-7991
Attorneys for Plaintiff

Respectfully submitted,
*/s/ Haskell S. Garfinkel*

## <u>CERTIFICATE OF SERVICE</u>

I, Haskell Garfinkel, an attorney, certify that on March 12, 2021, I caused a true and correct copy of the attached *Plaintiff Suzana Krajisnik's Motion to Reconsider* to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys and parties of record registered with the Court's ECF/CM system:

JACKSON LEWIS P.C

Jane M. McFetridge (ARDC No. 6201580)

Audrey Olson Gardner (ARDC No. 6337084)

150 North Michigan Avenue, Suite 2500

Chicago, Illinois 60601

Tel.: 312.787.4949

Jane.McFetridge@jacksonlewis.com

Audrey.Gardner@jacksonlewis.com

*s/ Haskell Garfinkel*
